## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**ANTHONY REESE**,

        **Plaintiff,**

v.                                            Civil Action No.  **2:23-cv-00805**

**TODD HANNAH, in his individual capacity;**
**ZACHARY WINTERS, in his individual capacity;**
**THE CITY OF DUNBAR, a political subdivision;**
**and JOHN/JANE DOE, unknown employees or**
**agents of The City of Dunbar,**

        **Defendants.**

## COMPLAINT

Plaintiff Anthony Reese brings this civil action under the law of the State of West Virginia and 42 U.S.C. § 1983 against Todd Hannah, Zachary Winters, the City of Dunbar, and John and Jane Doe officers to recover damages and other cognizable relief for his personal injuries stemming from the use of excessive force against him on or about December 3, 2022 at or near the Dunbar Police Department in Dunbar, West Virginia.  In support of his complaint, Plaintiff states as follows:

1.  Plaintiff Anthony Reese is a citizen of West Virginia and a resident of Charleston, Kanawha County, West Virginia.

2.  Defendant Todd Hannah ("Defendant Hannah") is a citizen of the State of West Virginia, and, upon information and belief, is a resident of West Virginia.  At all relevant times, Defendant Hannah was a police officer employed by the Dunbar Police Department and was acting under color of state law.

1

3.   Defendant Zachary Winters ("Defendant Winters") is a citizen of the State of West Virginia and, upon information and belief, is a resident of Kanawha County, West Virginia.  At all relevant times, Defendant Winters was a police officer employed by the Dunbar Police Department and was acting under color of state law.

4.   Defendant police officers Johns and Janes Doe (referred to collectively herein as "Defendant DPD Officers") are unidentified employees, representatives, or agents of Defendant City of Dunbar. The Johns and Janes Doe defendants are those police officers whose actions/inactions contributed to and caused the unwarranted and excessive force used upon Anthony Reese and the severe injuries and suffering inflicted upon Anthony Reese.

5.   Defendant City of Dunbar is a municipality and political subdivision located in Kanawha County, West Virginia.  The City of Dunbar operates the Dunbar Police Department, which employs the Defendant Hannah, Defendant Winters, and Defendant DPD Officers.

## JURISDICTION AND VENUE

6.   Jurisdiction is proper under 28 U.S.C. § 1331, because Plaintiff seeks damages and other remedies under federal law, specifically 42 U.S.C. § 1983. This Court has supplemental jurisdiction over the state law claims asserted under 28 U.S.C. § 1367.

7.   Venue is proper in this Court because all parties are located in the Southern District of West Virginia, and the actions giving rise to this civil action occurred within the territorial boundaries of this District.

## FACTS

8.   The Defendant City of Dunbar is a municipality and political subdivision in West Virginia and operates the Dunbar Police Department ("DPD").

9.  At all relevant times, the Defendant City of Dunbar employed the Defendant Hannah, Defendant Winters, and the Defendant DPD Officers as police officers.

10. On December 3, 2022, around 7:50 p.m., Anthony Reese approached the DPD on foot in response to a telephone call he received from a DPD officer.  The DPD officer informed Mr. Reese that Mr. Reese left a book at the DPD while he was there on a prior unrelated occasion.

11. Mr. Reese also intended to speak with Defendant Winters while at the DPD about prior instances of harassment by Defendant Hannah and other DPD Officers.

12. As Mr. Reese approached the DPD, Defendant Hannah exited the DPD.  Defendant Hannah walked across the street to the driver side of a parked car.  Defendant Hannah opened the car door, and then noticed Mr. Reese walking in his direction.

13. Defendant Hannah's interaction with Mr. Reese was captured and recorded on video by the DPD security cameras and, in part, by Defendant Hannah's body camera.

14. Defendant Hannah knew Mr. Reese.  When he saw Mr. Reese approaching, Defendant Hannah asked Mr. Reese why he was there.

15. Mr. Reese informed Defendant Hannah that he was there to speak with Officer Zachary Winters.  Defendant Hannah stated that Officer Winters was not present at the DPD.  Mr. Reese responded by turning and walking in the direction from which he came.  This interaction took less than 30 seconds.

16. As Mr. Reese walked away, Defendant Hannah closed the car door and walked back toward the DPD entrance.  As he approached the DPD entrance, Defendant Hannah turned off his body camera.  However, the DPD security camera continued to film after Defendant Hannah deactivated his body camera.

17. The security camera footage shows Defendant Hannah briefly operating his police radio. Defendant Hannah then called out to Mr. Reese, who was walking away from Hannah.  Mr. Reese stopped and turned to face Defendant Hannah from approximately twenty feet away.

18. Defendant Hannah then walked from the DPD entrance to where Mr. Reese had stopped. Video footage shows Defendant Hannah taking at least eight steps to cover the distance to Mr. Reese.  Defendant Hannah then grabbed Mr. Reese, threw him to the ground, and struck him several times.

19. The DPD security video shows that, while Mr. Reese was face down and being assaulted by Defendant Hannah, an additional six DPD Officers, including Defendant Winters, ran from the DPD and crowded closely around Mr. Reese.

20. Officer body cam footage shows the DPD Officers hitting Mr. Reese while loudly cursing, calling Mr. Reese a "fucking stupid bitch", and otherwise assaulting him without cause.

21. Approximately two minutes later, Defendant Hannah pulled Mr. Reese to his feet. Defendant Hannah placed Mr. Reese under arrest, then left the DPD.

22. Defendant Winters, who Mr. Reese had come there to see, then took custody of Mr. Reese and escorted him into the DPD. Video footage shows that Mr. Reese was bleeding heavily from his head at that point:



23. One of the DPD Officers called for EMS to assess Mr. Reese's physical condition. EMS personnel arrived, performed their assessment, and then transported Mr. Reese to Thomas Memorial Hospital's emergency department for treatment of his injuries, with Defendant Winters escorting him.

24. At Thomas Memorial Hospital, Mr. Reese was treated for multiple contusions and abrasions caused by blunt force trauma to his head, face, scalp, chest, abdomen, back, and knees. Mr. Reese was then discharged, and Defendant Winters then transported Mr. Reese to South Central Regional Jail where he spent three (3) days in the medical unit.

25. In his arrest report, Defendant Hannah alleged that "Anthony [Reese] approached me," and that Defendant Hannah "was immediately in fear that [Mr. Reese] was attempting to retrieve a weapon so I tossed my radio onto the ground and struck [Mr. Reese] five (5) times in the right side of his ribcage[.]" Defendant Hannah further alleged that "[o]nce in handcuffs a knife was recovered from Anthony's right pocket."

26. Body camera footage shows Defendant Winters stating to Thomas Memorial Hospital employees that, when Defendant Winters emerged from the DPD after receiving a call from Defendant Hannah, Mr. Reese was "down on the ground" and "reaching in his pocket for a knife", so Defendant Winters "delivered some strikes to the body" while "a couple other people landed some strikes to the face" of Mr. Reese. Defendant Winters then summarized that Mr. Reese "basically charged at the other officer and threatened to fight him[.]"

27. The video footage clearly shows that Defendant Hannah pursued Mr. Reese as he walked away, and that Mr. Reese did not approach Defendant Hannah as alleged in the arrest report and as Defendant Winters alleged to the medical providers at Thomas Memorial Hospital.

28. The video footage also appears to show Defendant Hannah operating his police radio *prior* to approaching the departing Mr. Reese, where Defendant Hannah then initiated his physical assault on Mr. Reese.

29. Upon information and belief, no knife was located at the scene or placed into evidence in connection with Mr. Reese's arrest. Mr. Reese denies ever having a knife during the events described herein.

30. In his arrest report, Defendant Hannah alleged that Mr. Reese was "swaying back and forth" and that Defendant Hannah "could smell the odor of an alcoholic beverage emanating from [Mr. Reese] when he threatened me his speech was also slurred."

31. Mr. Reese tested negative for alcohol at Thomas Memorial Hospital and again at South Central Regional Jail.

32. Defendant Hannah had no probable cause to pursue Mr. Reese, and Mr. Reese had no outstanding warrant.  Nonetheless, Defendant Hannah assaulted Mr. Reese, called in six additional DPD Officers to assist with the assault, and then falsely charged Mr. Reese with obstructing an officer, assaulting an officer, and public intoxication.

33. Defendant Hannah used unreasonable and excessive force against Mr. Reese, who posed no threat to Defendant Hannah and was attempting to walk away.  Defendant Hannah's unreasonable and excessive force caused serious physical and mental injuries to Mr. Reese.

34. Defendant Hannah's official report regarding Mr. Reese is incorrect and contains information that is demonstrably untrue as demonstrated by inconsistencies between Hannah's report's statements and the security camera and body camera footage.  Specifically, Defendant Hannah claimed that Mr. Reese had a knife, that Mr. Reese initiated the physical confrontation,

and that Mr. Reese was intoxicated, all in an attempt to justify his use of unreasonable and excessive force against Mr. Reese.

### COUNT I – EXCESSIVE FORCE IN VIOLATION OF THE LAWS AND CONSTITUTIONS OF WEST VIRGINIA AND THE UNITED STATES – <u>DEFENDANT HANNAH</u>

35. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

36. The laws and constitutions of the State of West Virginia and the United States both prohibit the use of excessive force to accomplish otherwise legitimate law enforcement actions, such as to effectuate the arrest or seizure of a person.

37. As described above, Defendant Hannah used excessive force when he physically seized Mr. Reese without cause and slammed him to the pavement, and when he struck and physically beat Mr. Reese, causing multiple contusions and abrasions to Mr. Reese's face, scalp, chest, abdomen, back, and knees. Defendant Hannah's actions were highly likely to result in serious bodily injury to Mr. Reese and were plainly excessive force.

38. The actions of Defendant Hannah were gratuitous acts of violence and were in no way justified or excused by any actions of Anthony Reese. The video recording reveals that Mr. Reese did not initiate the encounter with Defendant Hannah as alleged in the arrest report and that Mr. Reese did not have a knife as alleged in the arrest report. To the contrary, the video shows Mr. Reese walking away from Defendant Hannah, and shows Defendant Hannah pursuing Mr. Reese to initiate his physical assault upon Mr. Reese.

39. As a result of the unlawful conduct by Defendant Hannah, Anthony Reese suffered a permanent closed head injury, significant psychological trauma, and unnecessary and avoidable pain and suffering.

40. Defendant Hannah was acting in his capacity as a law enforcement officer, under color of state law, when he committed these acts of excessive force.  Accordingly, under 42 U.S.C. § 1983 and similar doctrines adopted by the State of West Virginia, Defendant Hannah is liable for the damages inflicted upon Anthony Reese.

### COUNT II – EXCESSIVE FORCE IN VIOLATION OF THE LAWS AND CONSTITUTIONS OF WEST VIRGINIA AND THE UNITED STATES – <u>DEFENDANT WINTERS, DEFENDANT DPD OFFICERS</u>

41. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

42.  The laws and constitutions of the State of West Virginia and the United States both prohibit the use of excessive force to accomplish otherwise legitimate law enforcement actions, such as to effectuate the arrest or seizure of a person.

43. Defendant Winters and Defendant DPD Officers used excessive force when they arrived on scene to find Mr. Reese already in a prone position with Defendant Hannah physically assaulting him.  Despite Mr. Reese's obviously helpless condition, Defendant Winters and Defendant DPD Officers crowded around Mr. Reese, struck him numerous times to his head and body, while loudly cursing, calling Mr. Reese a "fucking stupid bitch" and otherwise verbally abusing him.

44. The actions of Defendant Winters and Defendant DPD Officers were gratuitous acts of violence and were in no way justified or excused by any actions of Anthony Reese.  The video recording reveals that Mr. Reese already was prone and helpless when Defendant Winters and Defendant DPD Officers began their unwarranted assault on Mr. Reese.

45. As a result of the unlawful conduct by Defendants Winters and DPD Officers, Anthony Reese suffered unnecessary and avoidable pain and suffering.

8

46. Defendants Winters and DPD Officers were acting in their capacities as law enforcement officers, under color of state law, when they committed these acts of excessive force.  Accordingly, under 42 U.S.C. § 1983 and similar doctrines adopted by the State of West Virginia, Defendants Winters and DPD Officers are liable for the damages inflicted upon Anthony Reese.

### COUNT III – 42 U.S.C. § 1983 – *MONELL* LIABILITY – DEFENDANT CITY OF DUNBAR

47. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

48. The allegations specifically set forth in Count I above not only state a claim for relief against Defendant Hannah, Defendant Winters, and Defendant DPD Officers under the laws of the State of West Virginia, but also under 42 U.S.C. § 1983, provided that those Defendants were acting under color of law at the time.

49. At all relevant times, Defendant Hannah, Defendant Winters, and Defendant DPD Officers were acting under the color of their law enforcement duties as empowered by the Defendant City of Dunbar.

50. The allegations pertaining to Defendant City of Dunbar specifically set forth in Count I above not only state a claim for relief against Defendant City of Dunbar under the laws of the State of West Virginia, but also under 42 U.S.C. § 1983, because the conduct of Defendant Hannah, Defendant Winters, and Defendant DPD Officers not only occurred while acting under the aegis of Defendant City of Dunbar, but also, upon information and belief, resulted directly from the express written or unwritten customs and policies of Defendant City of Dunbar.

51. Defendant City of Dunbar is responsible for the policies, procedures, and practices implemented through its agents, departments, and employees, and for any injuries occasioned thereby.

9

52. Defendant City of Dunbar had actual knowledge through citizen complaints of a custom, pattern, and practice of using excessive force and threats by Defendant Hannah, Defendant Winters, Defendant DPD Officers, and other officers employed by Defendant City of Dunbar.

53. Specifically, Defendant City of Dunbar was a named defendant in a prior civil action before this Court numbered 2:22-cv-419 and titled *Michael A. Scott Sr., Administrator of the Estate of Michael A. Scott, Jr. v. Zachary Winters et al.* in which Defendant Winters and Officer Adam Mason were alleged to have brutally assaulted and caused the death of Michael Scott, Jr.

54. In addition to the *Scott* case, Defendant City of Dunbar has litigated prior claims of excessive force stemming from the actions of their employees against the residents of Kanawha County, including but not limited to *Smith v. City of Dunbar*, USDC S.D. W. Va., Civil Action No.: 2:18-cv-01276, *Taylor v. City of Dunbar*, USDC S.D. W. Va., Civil Action No.: 2:21-cv-00325, and other actions asserted in West Virginia Courts in recent years.

55. In the *Scott* case, Defendant City of Dunbar was alleged to have a pattern and practice of utilizing reckless policies that condone and encourage the use of excessive force by its officers.

56. In the *Scott* case it was alleged that the City of Dunbar changed its protocols for police to allow escalation of force to include strikes to the head to further this pattern and practice. The same allegations are made here as the City Council of Dunbar held a meeting and, upon request of the Chief of Police, approved changes to the City of Dunbar's official policies to allow the use of these strikes. This furthered the pattern and practice of the City of Dunbar to allow excessive force routinely by its police officers.

57. Defendant City of Dunbar, Defendant Winters, and Officer Mason collectively resolved the claims made in *Scott* prior to trial. *See* Exhibit No. 1[1] ***WV Record News Article – Dunbar***

---

[1] Exhibit 1 - Dunbar settles fatal police brutality civil suit for $2 million | West Virginia Record (wvrecord.com)

*Settles Fatal Police Brutality Civil Suit for $2 million*, and Exhibit No. 2[2] *WOWK News Article – "Dunbar Agrees to Pay Family of Michael Scott Jr. $2 million".* Although this matter resolved prior to trial, the facts and circumstances revealed in discovery in that case, including but not limited to the bodycam and surveillance videos, demonstrate that City of Dunbar was aware of the actions of their officers, including some of the very same officers that engaged in the conduct underlying this case. Yet, City of Dunbar continued to employ Defendant Winters and Officer Mason and to subject the public, including Anthony Reese, to the known and demonstrated danger posed by the City of Dunbar's policies condoning the use of excessive force.

58. Upon information and belief, Defendant Winters and Officer Mason[3] were among the officers who assaulted Anthony Reese in violation of his constitutional rights, but in compliance with reckless policies established by the Defendant City of Dunbar.

59. Upon information and belief, Defendant City of Dunbar took no remedial, adverse, or other action against Defendant Hannah, Defendant Winters, Officer Mason, or other DPD Officers in response to the claims asserted in *Scott* or other prior excessive force complaints lodged by citizens against those DPD officers.

60. Upon information and belief, Defendant City of Dunbar did not provide or require additional training for Defendant Hannah, Defendant Winters, Officer Mason, or other DPD Officers in response to the claims asserted in *Scott* or other prior excessive force complaints lodged by citizens against those DPD officers.

61. In taking no remedial action against, and requiring no additional training for, Defendant Hannah, Defendant Winters, Officer Mason, or other DPD Officers in response to the claims asserted in *Scott* and other excessive force complaints lodged by citizens against and about those

---

[2] Exhibit 2 - Dunbar, West Virginia, agrees to pay family of Michael Scott Jr $2 million (wowktv.com)
[3] Plaintiff anticipates that discovery will reveal Officer Mason as one of the Defendant DPD Officers.

and other DPD officers, Defendant City of Dunbar created a custom and practice of acceptance and encouragement regarding the use of excessive force by its employees.

62. When the officers employed by Defendant City of Dunbar inevitably commit further violent acts in the course of their employment that violate the rights of citizens such as Anthony Reese, Defendant City of Dunbar ratified those unconstitutional acts and allowed its employees to charge victimized citizens with unsubstantiated crimes.

63. Consistent with and as a direct and proximate result of the Defendant City of Dunbar's customs, patterns, practices, and/or procedures, Defendant Hannah, Defendant Winters, and Defendant DPD Officers unjustifiably and unlawfully assaulted and injured Anthony Reese in violation of his rights and privileges secured by the Constitution and laws of the United States.

64. Defendant City of Dunbar's acts and omissions in violation of Mr. Reese's rights make Defendant City of Dunbar liable to Mr. Reese for compensatory damages, prejudgment and post-judgment interest, and an award of attorney fees and costs pursuant to 42 U.S.C. § 1983.

## COUNT IV –NEGLIGENT TRAINING – DEFENDANT CITY OF DUNBAR

65. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

66. Defendant Hannah, Defendant Winters, and Defendant DPD Officers are agents and employees of Defendant City of Dunbar.  At all times referenced herein, those Defendants were acting within the scope of their respective agencies and employments with Defendant City of Dunbar.

67. Defendant City of Dunbar was negligent in failing to properly train Defendant Hannah, Defendant Winters, and the Defendant DPD Officers in proper police procedures and response procedures.

68. Defendant City of Dunbar was negligent by training Defendant Hannah, Defendant Winters, and the Defendant DPD Officers to follow its implemented customs, policies, and procedures, whether written or unwritten, that condone, encourage, and demonstrate indifference to, the use of excessive force by Defendant Hannah, Defendant Winters, and the Defendant DPD Officers.

69. Upon information and belief, Defendant City of Dunbar had knowledge of proven and alleged dangerous misconduct by Defendant Hannah, Defendant Winters, and the Defendant DPD Officers that involved the unnecessary use of force and unnecessary threats of lethal force prior to the incident involving Anthony Reese.

70. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action upon such knowledge by requiring Defendant Hannah, Defendant Winters, and the Defendant DPD Officers to undergo rehabilitative training was likely to enable and encourage Defendant Hannah, Defendant Winters, and the Defendant DPD Officers in their excessive use of force and their continued and excessive threats of the use of lethal force, and would one day result in the unnecessary and unconstitutional injury of a citizen in violation of clearly established laws and constitutional provisions.

71. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action based upon such knowledge by requiring Defendant Hannah, Defendant Winters, and the Defendant DPD Officers to undergo rehabilitative training was itself a violation of clearly established laws and constitutional provisions.

72. Anthony Reese was beaten and injured by Defendant Hannah, Defendant Winters, and the Defendant DPD Officers as a proximate result of the negligent training by Defendant City of Dunbar.

## COUNT V –NEGLIGENT SUPERVISION –
## DEFENDANT CITY OF DUNBAR

73. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

74. Defendant Hannah, Defendant Winters, and Defendant DPD Officers are agents and employees of Defendant City of Dunbar.  At all times referenced herein, those Defendants were acting within the scope of their respective agencies and employments with Defendant City of Dunbar.

75. Defendant City of Dunbar was negligent in its supervision of Defendant Hannah, Defendant Winters, and Defendant DPD Officers by failing to properly monitor the activities of Defendant Hannah, Defendant Winters, and the Defendant DPD Officers.

76. Defendant City of Dunbar was negligent in its supervision of Defendant Hannah, Defendant Winters, and Defendant DPD Officers by failing to follow proper policies and procedures regarding investigation of citizen complaints about Defendant Hannah, Defendant Winters, and the Defendant DPD Officers' pattern of using excessive force, and by failing to take remedial action in response to the complaints.

77. Defendant City of Dunbar was negligent in its supervision of Defendant Hannah, Defendant Winters, and Defendant DPD Officers by implementing customs, policies, and procedures, whether written or unwritten, that condone, encourage, and demonstrate indifference to the use of excessive force by Defendant Hannah, Defendant Winters, and the Defendant DPD Officers.

78. Upon information and belief, Defendant City of Dunbar had knowledge of proven and alleged dangerous misconduct by Defendant Hannah, Defendant Winters, and the Defendant DPD

Officers that involved the unnecessary use of force and unnecessary threats of lethal force prior to the incident involving Anthony Reese.

79. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove Defendant Hannah, Defendant Winters, and the Defendant DPD Officers based upon such knowledge was likely to enable and encourage Defendant Hannah, Defendant Winters, and the Defendant DPD Officers in their excessive use of force and their continued and excessive threats of the use of lethal force, and would one day result in the unnecessary and unconstitutional injury of a citizen in violation of clearly established laws and constitutional provisions.

80. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove Defendant Hannah, Defendant Winters, and the Defendant DPD Officers based upon such knowledge of their prior misconduct was itself a violation of clearly established laws and constitutional provisions.

81. Anthony Reese was beaten and injured by Defendant Hannah, Defendant Winters, and the Defendant DPD Officers as a proximate result of the Defendant City of Dunbar's negligent supervision of its employees.

### COUNT VI – OUTRAGE –
### DEFENDANT HANNAH, DEFENDANT WINTERS, DEFENDANT DPD OFFICERS

82. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

83. Defendant Hannah, Defendant Winters, and Defendant DPD Officers, acting within the course and scope of their respective employments with the Defendant City of Dunbar, willfully struck and physically beat Anthony Reese causing serious physical and mental injuries.  The

actions of those Defendants were highly likely to result in serious bodily injury to Mr. Reese and were plainly excessive force.

84. The actions of Defendant Hannah, Defendant Winters, and Defendant DPD Officers were gratuitous acts of violence and were in no way justified or excused by any actions of Anthony Reese.  The video recording reveals that Mr. Reese did not approach or threaten the Defendants in any way, and Mr. Reese has no history of violent behavior.

85. The conduct of Defendant Hannah, Defendant Winters, and Defendant DPD Officers described herein was (1) intentional and reckless with knowledge that emotional distress would likely result, (2) outrageous and went beyond all bounds of decency to be tolerated in a civilized community, (3) the direct and proximate cause of the emotional distress endured by Mr. Reese, and (4) severe and damaging.

86. As a direct and proximate result of the unlawful and outrageous conduct by Defendant Hannah, Defendant Winters, and Defendant DPD Officers, Anthony Reese suffered unnecessary and avoidable psychological trauma, emotional distress, physical pain and suffering, and permanent injury

87. As a direct and proximate result of the unlawful and outrageous conduct by Defendant Hannah, Defendant Winters, and Defendant DPD Officers, Anthony Reese has been deprived of the rights privileges and immunities afforded to the citizens of the State of West Virginia and the United States; has been subjected to psychological injury; has endured and will endure mental anguish and emotional distress; has incurred medical bills, and will incur medical bills in the future; has been deprived of the enjoyment of life, thereby entitling him to an award of actual, consequential and exemplary damages, costs, and reasonable attorney fees.

## COUNT VII – CIVIL CONSPIRACY –
## DEFENDANT HANNAH, DEFENDANT WINTERS, DEFENDANT DPD OFFICERS

88. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

89. As detailed above, Defendant Hannah, Defendant Winters, and Defendant DPD Officers, acting within the scope of their respective employments, engaged in a civil conspiracy to conceal and mischaracterize their actions of excessive force and to otherwise protect themselves from revealing their unlawful actions toward Anthony Reese. This conspiracy and pattern of conduct between and among these Defendants was designed to prevent discovery of the true nature of the Defendants' actions from coming to light and being investigated.

90. Defendant Hannah, Defendant Winters, and Defendant DPD Officers did conspire with and among each other to physically engage Anthony Reese despite having no reason to arrest or detain Mr. Reese, and then conspired to prevent their excessive force and deliberate indifference toward Mr. Reese from being revealed.

91. Defendant Hannah, Defendant Winters, and Defendant DPD Officers were acting in their respective capacities as law enforcement officers within the scope of their employment, under color of state law, when they committed these acts of excessive force and conspiracy.

92. As a direct and proximate result of Defendant Hannah, Defendant Winters, and Defendant DPD Officers' unreasonable actions, Anthony Reese suffered substantial bodily injuries, severe emotional distress, mental anguish, embarrassment, humiliation, economic loss, and physical pain and suffering.

## COUNT VIII – PUNITIVE DAMAGES –
## DEFENDANT HANNAH, DEFENDANT WINTERS, DEFENDANT DPD OFFICERS

93. Plaintiff re-alleges and incorporates all previous paragraphs as though separately set forth herein.

94. The conduct of Defendant Hannah, Defendant Winters, and Defendant DPD Officers as set forth above was malicious, or was undertaken with conscious, reckless and outrageous indifference to the health, safety and welfare of others, thereby justifying an award of punitive damages.

## **PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

Accordingly, for the foregoing reasons, Plaintiff Anthony Reese prays for the following relief:

(a)  Compensatory damages for his pain and suffering;

(b)  Special damages for his future medical care and lost earnings;

(c)  Pre-judgment and post-judgment interest;

(d)  Attorneys' fees and costs;

(e)  Punitive damages (only from Defendant Hannah, Defendant Winters, and Defendant DPD Officers); and

(f)  Any and all other relief that this Court deems appropriate.


**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**


**ANTHONY REESE**,
By counsel


/s/ L. Dante diTrapano
L. Dante' diTrapano, Esq. (WVSB #6778)
Charles Bellomy, Esq. (WVSB #9117)
Calwell Luce diTrapano PLLC
500 Randolph Street
Charleston, WV  25302
Telephone: (304) 343-4323

Facsimile: (304) 344-3684
*Counsel for Plaintiff*

and

W. Jesse Forbes (WVSB# 9956)
Jennifer N. Taylor (WVSB# 4612)
FORBES LAW OFFICES, PLLC
1118 Kanawha Blvd. East
Charleston, WV 25301
Telephone: (304) 343-4050
Facsimile: (304) 343 7450
*Counsel for Plaintiff*

# EXHIBIT 1

## WV Record News Article

**"Dunbar Settles Fatal Police Brutality Civil Suit for $2 Million"**

**August 9, 2023**

# WEST VIRGINIA RECORD



By Chris Dickerson
Aug 9, 2023

CHARLESTON – The City of Dunbar has agreed to settle a fatal police brutality civil lawsuit with the estate of a man who was killed while in custody.

The city has agreed to pay $2 million to the family of Michael Scott Jr., who died in police custody last July. The settlement figure includes attorney fees, court costs, funeral and medical bills as well as compensatory damages.

"The sheer amount of the settlement certainly shows an acknowledgment that our claim was meritorious," L. Dante diTrapano, one of the attorneys who represented the estate, told The West Virginia Record. "I reserve any further comment until after the final approval hearing on Aug. 15 before Judge Berger."

EXHIBIT 1

The complaint originally was filed September 29 by Michael Scott Sr., administrator of the estate of Michael Scott Jr. The father claims excessive force by Dunbar police officers Zachary Winters and Adam Mason, including being power slammed to the pavement, caused his son's death last summer. It says the officers were attempting to arrest Scott for an outstanding warrant for a misdemeanor trespassing charge.

Scott's death certificate said he died July 24, 2022, of "blunt force injuries to the head." The certificate, filed with the West Virginia Department of Health and Human Resources; Bureau For Public Health Vital Registration Office says the injuries occurred approximately two days before his death.

There have been no criminal charges filed against the officers, and both still are employed by the Dunbar Police Department.

"Defendant Winters began yelling, berating and threatening Michael Scott Jr.," the original complaint states. "Defendant Mason arrived and was actively looking to see if he could find a reason to arrest or further detain Michael Scott Jr."

They didn't find any and let to continue patrols, according to the complaint. About 15 minutes later, Winters encountered Scott Jr. again after learning of an apparently outstanding warrant for misdemeanor trespassing. Scott Jr. was arrested.

Mason soon arrived to assist Winters, according to the complaint. Bodycam footage from Winters shows him cuffing Scott Jr. and searching him. It says Scott Jr. made no attempt to run or flee. But, the complaint says footage shows Winters yelling and screaming at Scott Jr. telling him not to pull away.

"Then, as shown on both defendant Winters and defendant Mason's bodycam footage, with no provocation nor any valid justification, defendant Winters picked the cuffed and restrained Michael Scott Jr. up from behind and lifted his body off of the ground, slamming Michael Scott Jr.'s head onto the pavement of the street and causing catastrophic injuries to Michael Scott Jr.'s skull and head," the

complaint states. "Defendant Winters would later state that he 'suplexed' Michael Scott Jr. because he 'ran' from him.

"Defendant Winters actually slammed Mr. Scott's head into the pavement through the 'suplex' maneuver, which caused him to suffer an epidural hematoma and three basilar skull fractures that ultimately resulted in his death."

A suplex is a professional wrestling move where a wrestler picks up the opponent off the mat and, using their own body weight, throws the opponent into the air over their center of gravity causing the opponent to be airborne and land violently.

"Mason stated to defendant Winters, immediately after the violent slamming of Mr. Scott through the 'suplex' maneuver in which Mr. Scott was slammed on his head into the pavement, 'All I see is you picked him up and slammed him,'" the bodycam footage shows, according to the complaint.

Mason then contacted Metro 911 to request a medic be sent to the Dunbar Police Department to evaluate Scott Jr. Winters and Mason then tried to clean the streaming blood from the face, head and ear area of Scott Jr. at the scene.

"They did not request or call for the paramedic to come to the scene, but instead cleaned up the injury and the large amounts of blood and then transported Mr. Scott from the scene to the Dunbar Police Department in defendant Winters' cruiser," the complaint states.

It says Winters' bodycam video and audio as well as footage from the holding area of the Dunbar Police Department shows "a dangerous and shocking series of events" following the suplex incident.

"When paramedics arrived, defendant Winters downplays the injuries to Michael Scott Jr., claiming he fell when attempting to run from him and that his earring had been torn by the pavement when he fell running, which had not occurred," the complaint states. "Further, Michael Scott Jr. directly told the paramedics at the station, as can be

heard on defendant Winters' bodycam, that he wished to go to the hospital as he was concerned about internal injuries."

The complaint says the paramedics waited while Winters and Mason had a discussion with their bodycams turned off outside of the holding area. When they return to the holding area, it says the footage shows the officers stare at Scott Jr., who did some paperwork with the paramedics, who then note Scott Jr. declined transport to a hospital.

An hour or so later, Scott Jr. was transported to South Central Regional Jail in Charleston. During transport, bodycam footage shows Scott moaning, saying the pain and pressure in his head was worse, begging for help and asking to be taken to the hospital. Winters tells Scott he isn't taking him to a hospital, only to jail.

At the jail, bodycam footage shows Winters cuffing and restraining Scott, who is nearly falling over and is leaning on a wall to support himself. It shows Winters shouting at Scott to tell him to stop leaning on the wall and to keep walking. It also shows Scott needing assistance from two correctional officers to stand while he is processed through the body scanner.

As Scott continued to moan in pain and lay his head on a counter, Winters continues to claim Scott is fine and that he's faking his condition.

"SCRJ guards and nursing staff explained to defendant Winters that they did not believe Michael Scott Jr. was medically clear or safe to enter the jail," the complaint states. "Defendant Winters then began arguing with the staff that he had a jail commitment and that he was leaving Michael Scott Jr. at the jail."

Winters again said the blood from Scott's ear was caused by the earring being torn from his ear, according to the complaint. It also says jail staff told Winters he would need to take Scott to a hospital. Winters argued then messaged Mason, who had a phone call with a lieutenant at the jail.

"Mason went so far as to represent to the SCRJ Lieutenant that he had spoken with both the Dunbar city attorney and Dunbar municipal judge and that they had confirmed that once a jail commitment was issued that the Dunbar police officers would be able to drop a person at the jail and that they were not responsible for taking them for further medical clearance," the complaint states.

"Winters was callous and uncaring, with absolutely no remorse for his actions injuring Michael Scott Jr. as he watched Michael Scott Jr.'s condition continue to deteriorate and the internal head injuries continue to manifest. ...Winters continued to attempt to mislead the jail and medical staff telling them that Mr. Scott was putting on a show and faking his condition or that he possible was having a drug overdose. This resulted in jail staff and medical staff administering Narcan to Mr. Scott."

The complaint says Winters told Scott to "stop putting on a show" and told staff, "He decided to run from ...didn't work out" and "tried to run from me so he got suplexed."

When a jail staff told Winters that Scott may have defecated on himself, the complaint says Winters answered in an uncaring manner that "he thought they had cooked salmon at the police station earlier and that could have been the smell as it 'smelled like ass.'"

Talking to Mason on the phone, Winters told him, "I'm watching Michael Scott Jr. basically die right here."

Eight minutes after Scott arrived at the jail, staff contacted the Charleston Fire Department for his "alarming and deteriorating physical condition." Jail staff told CFD personnel they believed Scott had been beaten by the officer who brought him to the jail.

After Scott was transported, a nurse from Charleston Area Medical Center General Hospital contacted Winters to see what had happened because Scott couldn't communicate.

According to the complaint, Winters told the nurse Scott had been "picked up and placed on the ground."

Scott died on July 24 at CAMC. The injuries he sustained included an epidural hematoma and basilar skull fractures. The complaint says the prevention of appropriate medical treatment caused Scott pain and suffering, mental and emotional distress, embarrassment, humiliation, fear and led to his death.

Both the city and Mason have other excessive force complaints pending in federal court, and the complaint says other cases have been filed in state court. In addition, it says the Dunbar Police Department recently changed its use of force policy to allow "further escalation and to include striking of a subject's head."

The complaint accuses Winters and Mason of using excessive force, depravation of medical care and deliberate indifference and civil conspiracy. It accuses the city of reckless conduct and all defendants of depravation of rights. It also accuses Winters of assault and battery.

The estate is being represented by Calwell Luce diTrapano in Charleston and by Forbes of Forbes Law Offices in Charleston. The City of Dunbar and Mason are being represented by Wendy Greve and Vanston of Pullin Fowler Flanagan Brown & Poe in Charleston. Winters is being represented by Sandra Henson Kinney and Wright of Lewis Gianola in Charleston.

*U.S. District Court case number 2:22-cv-00419*

# EXHIBIT 2

## WOWKTV News Article

**"Dunbar Agrees to Pay Family of Michael Scott Jr. $2 Million"**

**August 8, 2023**

KANAWHA COUNTY, WV

## Dunbar agrees to pay family of Michael Scott Jr. $2 million

by: Rachel Pellegrino

Posted: Aug 8, 2023 / 11:58 AM EDT

Updated: Aug 8, 2023 / 06:28 PM EDT

DUNBAR, WV (WOWK) – A multi-million dollar settlement is on the table for a civil lawsuit filed in connection to the death of a man who was fatally injured while in police custody.

According to court records, the city of Dunbar has agreed to pay the family of Michael Scott Jr. $2 million following his death in police custody in July 2022. That amount includes attorney fees, costs, expenses, and funeral and medical bills.

GRAPHIC CONTENT: Bodycam video, police reports released from Dunbar police in-custody death

"The sheer amount of the settlement certainly shows an acknowledgment that our claim was meritorious," said Dante' diTrapano, one of the family's attorneys. "I reserve any further comment until after the final approval hearing on Aug. 15 before Judge Berger."

The civil complaint filed in September 2022 claims Scott was fatally injured and denied medical treatment. It states that police officers Zachary Winters and Adam Mason were attempting to arrest Scott on the night of July 22, 2022, for an outstanding warrant for a misdemeanor trespassing charge. Winters allegedly lifted Scott off the ground and slammed his head into the pavement.

The complaint claims Scott was denied proper medical treatment for hours, and he died two days later from what the medical examiner called "blunt force injuries to the head."

No criminal charges have been filed against the officers involved, and according to the Dunbar Police Department, both are still employed.

EXHIBIT 2

Dunbar Police Chief Brian Oxley declined to comment pending the finalized settlement agreement. 13 News has reached out to the defense attorneys; however, they have not gotten back.

Both parties are expected to appear in court on Tuesday, Aug. 15, for a Federal Judge to rule on the settlement hearing.