IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANTHONY REESE,

        Plaintiff,

v.                                          CIVIL ACTION NO.   2:23-cv-00805

TODD HANNAH, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss, filed by the City of Dunbar, Todd Hannah, and Zachary Winters ("Defendants"). [ECF No. 20]. Plaintiff Anthony Reese responded in opposition, [ECF No. 24], and Defendants replied, [ECF No. 25]. For the following reasons, Defendants' motion is **GRANTED** in part and **DENIED** in part.

I.     Background

Plaintiff brings this lawsuit against two named Dunbar Police Officers—Todd Hannah and Zachary Winters—as well as the City of Dunbar and John/Jane Doe Officers. [ECF No. 1, at 1]. On December 3, 2022, around 7:50 p.m., Plaintiff alleges that he walked to the Dunbar Police Department ("DPD") to pick up a book he left there on a prior occasion and to speak with Defendant Winters. *Id.* ¶ 10. As he approached the police station, Defendant Hannah, who was outside, asked Plaintiff

why he was there. *Id.* ¶¶ 12–14. The two interacted for about thirty seconds, and Defendant Hannah informed Plaintiff that Defendant Winters was not at the station. *Id.* ¶ 15. Plaintiff then turned and walked away, while Defendant Hannah approached the DPD entrance. *Id.* ¶ 16.

Although Defendant Hannah allegedly turned off his body camera, the DPD's outside security camera caught and recorded the incident that followed.[1] Defendant Hannah called out to Plaintiff—who stopped walking—and approached him. *Id.* ¶ 18. Defendant Hannah then grabbed Plaintiff, "threw him to the ground, and struck him several times." *Id.* ¶ 19. While Plaintiff was face down, six other DPD officers—including Defendant Winters—ran outside and assisted Defendant Hanah. *Id.* ¶ 19. The DPD officers repeatedly struck Plaintiff while insulting and cursing at him before pulling him to his feet and placing him under arrest. *Id.* ¶¶ 20–21.

Plaintiff, "bleeding heavily from his head," was assessed by emergency medical services before being transported to an emergency department to receive treatment for injuries sustained in the incident. *Id.* ¶ 23. He had multiple contusions and abrasions on his head, face, scale, chest, abdomen, back, and knees. *Id.* ¶ 24. He was

---

[1] Although Plaintiff continuously refers to the security camera footage in his complaint, the court will not consider the actual video footage at this stage but only the allegations made in the complaint. Generally, at the motion to dismiss stage, courts are limited to the facts in the complaint, but courts may consider exhibits "integral to and explicitly relied on in the complaint." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Courts may also consider "matters of public record, . . . and exhibits attached to the complaint." *Delph v. Prince William Cnty.*, No. 120CV1086LMBIDD, 2022 WL 1164005, at *1 n.2 (E. D. Va. Apr. 19, 2022) (quoting *Moore v. Flagstar Bank*, 6. F. Supp. 2d 496, 500 (E.D. Va. 1997)). However, Plaintiff did not attach the video footage as an exhibit to his Complaint or his response in opposition to the motion to dismiss.

subsequently discharged and spent three days in South Central Regional Jail's medical unit. *Id.*

The DPD officers tell a different story. Defendant Hannah asserted in his arrest report that he "was immediately in fear that [Plaintiff] was attempting to retrieve a weapon" and that a knife was recovered from Plaintiff's right pocket. *Id.* ¶ 25. Defendant Hannah also stated that he could smell alcohol on Plaintiff, who was swaying back and forth. *Id.* ¶ 30. Meanwhile, Defendant Winters stated to the hospital staff that Plaintiff was reaching for a knife in his pocket while officers struck his face and body, but Plaintiff "basically charged at the other officer and threatened to fight him." *Id.* ¶ 26. Plaintiff, however, denies ever having a knife, and no knife was located at the scene or placed into evidence in connection with the arrest. *Id.* ¶ 29. Moreover, Plaintiff tested negative for alcohol at both the hospital and the jail. *Id.* ¶ 31.

Plaintiff now sues Defendant Hannah, Defendant Winters, John and Jane Doe DPD Officers, and the City of Dunbar. He brings seven causes of action: (1) excessive force against Defendant Hannah; (2) excessive force against Defendant Winters and John/Jane Doe Officers; (3) *Monell* liability[2] against the City of Dunbar; (4) negligent training against the City of Dunbar; (5) negligent supervision against the City of Dunbar; (6) intentional infliction of emotional distress against Defendants Hannah, Winters, and John and Jane Doe Officers; and (7) civil conspiracy against Defendants Hannah, Winters, and John and Jane Doe Officers. *Id.* at 7–17. Plaintiff requests

---

[2] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

compensatory damages, special damages for lost earnings and future medical care, attorneys' fees, and punitive damages. *Id.* at 18.

Defendants have filed a motion to dismiss the complaint in its entirety. [ECF No. 20]. Defendants argue that Plaintiff's claims for excessive force are barred by *Heck v. Humphrey*[3] because Plaintiff pleaded guilty in state court for assault on an officer. [ECF No. 21, at 6]. They also assert that the *Monell* claim must be dismissed because the officers did not commit a constitutional violation, and alternatively, that Plaintiff did not sufficiently allege a basis for such claim. *Id.* at 9–12. As to the remaining counts—negligent training, negligent supervision, intentional infliction of emotional distress, and conspiracy—Defendants argue that each claim fails as a matter of law. *Id.* at 13–17. Plaintiff responded in opposition, [ECF No. 24], and Defendants replied, [ECF No. 25]. The matter is ripe for review.

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When ruling on a motion to dismiss, courts must accept as true all of the

---

[3] *See* 512 U.S. 477 (1994).

factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 570. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

### III. Discussion

#### A. *Counts I and II: Excessive Force*

Defendants Hannah and Winters assert that Counts I and II against them must be dismissed for two reasons, the first of which can be quickly addressed. First, to the extent that these counts are premised upon the West Virginia Constitution, Defendants assert that there is no right of action for monetary damages. [ECF No.

21, at 5]. Defendants are correct. Article III Section 6 of the West Virginia Constitution states that "[t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated." And the West Virginia Supreme Court, in response to a certified question from this district, held that "West Virginia does not recognize a private right of action for monetary damages for a violation" of this provision of the State Constitution. Syl. Pt. 3, *Fields v. Mellinger*, 851 S.E.2d 789 (W. Va. 2020). As such, Plaintiff may not seek monetary relief under the West Virginia Constitution.

Defendant's second argument warrants a more in-depth discussion as Plaintiff also brings these excessive force claims under 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution. *See* [ECF No. 1, ¶ 6 ("Plaintiff seeks damages and other remedies under federal laws, specifically 42 U.S.C. § 1983.")]. This statute "creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023) (quoting *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013)). As it relates to federal law, Defendants claim that because Plaintiff pleaded guilty to assault of an officer in state court, his § 1983 excessive force claims—if allowed to proceed—would imply the invalidity of his state conviction. [ECF No. 21, at 6–7]. Plaintiff responds that the *Heck v. Humphrey* bar is not applicable in his case. [ECF No. 24, at 8–10].

In *Heck v. Humphrey*, the Supreme Court held that a claim for damages is not cognizable under § 1983 if the successful prosecution of such claim would necessarily

6

imply the invalidity of an earlier conviction. 512 U.S. 477, 487 (1994); *see also Ballenger v. Owens*, 354 F.3d 842, 846 (4th Cir. 2003) ("The logical *necessity* that the judgment in the § 1983 case imply the invalidity of a criminal conviction is at the heart of the *Heck* requirement for dismissal of the § 1983 action."). If the § 1983 suit would invalidate the criminal conviction, the complaint must be dismissed absent a showing that the conviction has already been invalidated. *Moskos v. Hardee*, 24 F.4th 289, 295 (4th Cir. 2022). However, if a successful action would not "demonstrate the invalidity of any criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487. This rule prevents collateral attacks on a conviction through a civil suit. *Boswell v. Bullock*, No. 5:11-CV-94-F, 2012 WL 2920036, at *5 (E.D.N.C. July 17, 2012).

For the *Heck* bar to apply, there must be a legal nexus between the alleged excessive force and the assault. *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir. 2006) (unpublished) (per curiam). A district court, in determining whether *Heck* bars a plaintiff's claim, must engage in "a close factual examination of the underlying conviction." *Id.*; *see also Hargrove v. Iezzi*, No. 2:05-cv-617-FtM-34SPC, 2008 WL 11430013, at *4 (M.D. Fla. Mar. 20, 2008 ("[T]he application of *Heck*, particularly to an excessive force claim, requires a close examination of the facts.") (citing *Dyer v. Lee*, 488 F.3d 876, 883 (11th Cir. 2007)). "A person convicted of resisting arrest . . . is not *per se* barred from bringing a § 1983 action for excessive force arising from the same interaction" so long as the action would not undermine the criminal judgment's validity. *Boswell*, 2012 WL 2920036, at *5. For example, if "the alleged [excessive

7

force] occurred, independently, either before [Plaintiff] resisted arrest, or after his resistance had clearly ceased, then a successful § 1983 suit for excessive force would not imply invalidity of the conviction." *Riddick*, 202 F. App'x at 616 (citing *Smith v. City of Hemet*, 394 F.3d 689, 697–99 (9th Cir. 2005) (en banc)). In sum, excessive force by an officer and assault on an officer are not always mutually exclusive. *Id.* (stating that the two may "coexist").

After the incident, Plaintiff pleaded guilty in state court to assault on a government employee in violation of W. Va. Code 61-2-10b(e). [ECF No. 20-3]. This statute makes it a misdemeanor when "[a]ny person . . . unlawfully attempts to commit a violent injury to . . . [a] law-enforcement officer, . . . or unlawfully commits an act which places that person acting in his or her official capacity in reasonable apprehension of immediately receiving a violent injury." W. Va. Code 61-2-10b(e). In this case, the court is unaware of the precise factual basis for Plaintiff's plea. It is not clear from the face of the complaint and attached exhibits whether the alleged excessive force occurred before, during, or after the assault. Plaintiff alleges that he was already face down when being struck by Defendant Hannah, forming the basis of Count I. And in Count II, Plaintiff alleges that he was already "prone and helpless" on the ground when Officer Winters exited the police station and struck Plaintiff's face and body. Thus, as the timing is not clear, I cannot determine whether Plaintiff's excessive force claim "would necessarily imply invalidity" of his state court conviction. *See Riddick*, 202 F. App'x at 616. Defendant's motion is therefore **DENIED** as to Counts I and II.

B. *Count III: Monell Liability*

Plaintiff next brings a cause of action against Defendant City of Dunbar for municipal liability. [ECF No. 1, ¶¶ 47–64]. Defendants asserts that this claim must fail because he did not suffer a constitutional violation under the Fourth Amendment, and, alternatively, because Plaintiff inadequately alleges any basis for this claim. [ECF No. 21, at 9–12]. Having already determined that the facts could support a Fourth Amendment violation, I will address Defendant's alternative argument, i.e., whether Plaintiff's pleading satisfies the *Iqbal/Twombly* standard.

*Monell* allows an individual to bring a § 1983 claim against a local government when its formal policies or customs result in a deprivation of rights under the Constitution. *See Braley v. Thompson*, 2:22-cv-534, 2023 WL 2351881, at *5 (S.D. W. Va. Mar. 3, 2023) (citing *Monell v. v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)). Municipalities are "persons" within the meaning of § 1983 and thus can be sued when they inflict a constitutional injury. *Wickline v. Cumberledge*, No. 2:23-CV-00799, 2024 WL 3416282 (S.D. W. Va. July 15, 2024) (citing *Franklin*, 64 F.4th at 535). Municipalities inflict constitutional injuries where their "official policy or custom" causes the deprivation. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). This can occur in four ways:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

9

*Id.* A plaintiff must prove both that such policy or custom exists and that it caused or inflicted the alleged injury. *Franklin*, 64 F.4th at 536 *see Wellington v.* Daniels, 717 F.2d 932, 936 (4th Cir. 1983) (stating that a local government can only be liable "when there is a deprivation of constitutional right *caused* by" the policy") (emphasis in original). However, "isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice." *Lytle*, 326 F.3d at 473.

Here, Plaintiff asserts that his Complaint sufficiently alleges facts based upon the express policy theory, upon an omission such as a failure to train, and upon a persistent practice theory. [ECF No. 24, at 13].

At the outset, I note that Plaintiff's argument that he adequately alleged a failure to train is unsuccessful. For a failure to train claim, a plaintiff must "identify particular deficiencies in a training program that led to the plaintiff's injuries." *Barnes v. Montgomery Cnty.*, 2023 WL 8454633, at *3 (D. Md. Dec. 6, 2023). Plaintiff does not do that in his Complaint.

Next, to succeed under the "express policy" method, a plaintiff must point to "formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (internal markings omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). A formal rule is often in writing but need not be. *Pembaur*, 475 U.S. at 480.

Defendants argue that Plaintiff's claim consists solely of legal conclusions that are not entitled to the presumption of truth at the motion to dismiss stage. [ECF No.

21, at 10]. This is not so. Plaintiff asserts that "the City Council of Dunbar held a meeting and, upon request of the Chief of Police, approved changes to the City of Dunbar's official policies to allow the use of" strikes to the head. [ECF No. 1, ¶ 56]. This is a factual allegation, which is entitled to the presumption of truth at the motion to dismiss stage. *See Farnsworth*, 2019 WL 956806, at *1. Thus, Plaintiff has alleged the existence of an express policy which caused his injury.

Next, to be liable under the fourth and final method, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers as a matter of specific intent or deliberate indifference to correct or terminate the improper custom and usage." *Howard*, 68 F.4th at 953 (internal quotations omitted). In other words, "a pattern of comparable practices" must be known to the policymakers. *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). "Sporadic and isolated" incidents do not suffice under *Monell*; only "widespread or flagrant violations will." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (internal quotations omitted) (citing *Spell*, 824 F.2d at 1387).

Plaintiff alleges the existence at least three lawsuits in recent years against the City of Dunbar for the same conduct at issue here. [ECF No. 1, ¶¶ 53–55]. Some of those cases include the same officers. As Defendants noted, those actions were settled, and as such, there were no findings of excessive force in those cases. *See* [ECF No. 21, at 11]. However, Plaintiff has sufficiently alleged that the existence of these multiple lawsuits in recent years has put the city on notice of an alleged pattern of

11

its officers using excessive force, which caused Plaintiff's injuries here. As such, it is premature to dismiss the *Monell* claim at the motion to dismiss stage. *See Peterson v. Prince George's Cnty.*, No. PWG-16-1947, 2017 WL 2666109, at *4 (D. Md. June 21, 2017) (declining to dismiss a *Monell* claim at the motion to dismiss stage "[a]lthough Plaintiffs did not identify any cases in which County officers were found liable on excessive force claims" because the cases either settled or were still pending). Plaintiff has plausibly alleged at this stage that Defendant City of Dunbar has either an express policy or a persistent practice of allowing Defendant officers to use excessive force, which caused his injuries. Defendants' motion is **DENIED** as to Count III.

### C. Counts IV and V: Negligent Training and Supervision

Next, Plaintiff brings two claims against Defendant City of Dunbar for negligent training and negligent supervision.[4] Negligent training and supervision "are governed by basic negligence principles." *Doe v. Cabell Huntington Hosp. Inc.*, No. CV 3:23-0437, 2023 WL 8529080, at *2 (S.D. W. Va. Dec. 8, 2023). To bring these claims, a plaintiff must allege "that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Id.* at *3 (quoting *Biser v. Mfrs. & Traders Tr. Co.*, 211 F. Supp. 3d 845, 856 (S.D. W. Va. 2016)). "West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence." *Carroll v. USAA*

---

[4] The court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. For Plaintiff's state law claims, I will apply West Virginia state substantive law. *See Erie. R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*Sav. Bank*, No. CV 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017); *see also C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 791 (W. Va. 2021) (Wooton, J., concurring in part, dissenting in part) ("The majority holds—unequivocally and without reference to any facts, unique or otherwise—that intentional misdoing on the part of an employee, even under circumstances where it was foreseeable to the employer, cannot form the basis of a negligent supervision claim.").

Plaintiff's claims for negligent training and negligent supervision must fail because he does not plead "underlying conduct of the supervised employee that is also negligent." *Braley*, 2023 WL 2351881, at *4 (quoting *C.C.*, 859 S.E.2d at 774). Plaintiff attempts to save his claims by asserting he alleges negligent conduct by the unknown John Doe employees. [ECF No. 24, at 13]. The complaint, however, does not do this, and "parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175 184 (4th Cir. 2013). All of Plaintiff's allegations against the individual officers—both named and unknown—describe intentional, deliberate acts. Under West Virginia law, this conduct cannot form the basis of a negligent training or supervision claim. As such, Defendants' motion is **GRANTED** as to Counts IV and V.

### D. *Count VI: Intentional Infliction of Emotional Distress*

Plaintiff also brings a claim for intentional infliction of emotional distress, i.e. outrage, against the individually named Defendant Officers. He alleges that the beating constitutes "gratuitous acts of violence" that caused him severe emotional

13

distress. [ECF No. 1, ¶¶ 84–86]. To establish a claim for intentional or reckless infliction of emotional distress, a plaintiff must show

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; 3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab'ys*, 504 S.E.2d 419 (W. Va. 1988). A trial court must "first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress," which is a legal question. *Id.* at Syl. Pt. 4. A lawful arrest cannot rise to the level of outrage without excessive force. *Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) (stating that without excessive force, a lawful arrest is "merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent"). There is a high burden of proof to succeed on a claim for outrage. *Id.* There is only liability "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (quoting *Harless v. First Nat'l Bank*, 289 S.E.2d 692, 703–04, n.20 (W. Va. 1982)). For example, the Fourth Circuit has dismissed claims for intentional infliction of emotional distress when an officer did not strike, kick, or

verbally abuse an individual resisting arrest, and instead used no more force than necessary to subdue the individual. *Pegg*, 845 F.3d at 120–123 (collecting cases).

Defendants assert that this claim must be dismissed because there was no excessive force, and thus, there can be no intentional infliction of emotional distress. [ECF No. 21, at 16]. However, as previously mentioned, the court does not find it appropriate to dismiss the excessive force counts at this stage. Further, the alleged conduct in this case is much worse than that at issue in *Pegg*. Plaintiff claims he was struck multiple times *after* being subdued by at least five different officers, and that the officers shouted obscene profanities at him during the entire encounter. Taking Plaintiff's version of events as true, and without knowing the timing of the incidents, Plaintiff has plausibly pleaded that defendant's conduct may reasonably be regarded as so extreme and outrageous as to cause emotional distress. As such, Defendants' motion as to Count VI is **DENIED**.

### E. Count VII: Civil Conspiracy

Finally, Plaintiff alleges the Individual Officers engaged in a civil conspiracy wherein they "conceal and mischaracterize their actions of excessive force and to otherwise protect themselves from revealing their unlawful actions." [ECF No. 1, ¶ 89].

To establish a claim for civil conspiracy, an individual must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*,

983 F.2d 570, 577 (4th Cir. 1992)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations must reasonably lead to the inference that the defendants "shared the same conspiratorial objective," meaning that they "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

A § 1983 conspiracy claim may be barred by the intracorporate conspiracy doctrine, which states that "employees, when acting in the scope of their employment, cannot conspire among themselves." *Roberts v. Ballard*, No. 2:15-CV-15458, 2017 WL 896983, at *5 (S.D. W. Va. Mar. 7, 2017) (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 224 (4th Cir. 2004). For example, in *Veney v. Ojeda*, a court dismissed a conspiracy claim against two police officers after a plaintiff alleged that the officers conspired to violate his Fourth Amendment rights. 321 F. Supp. 2d, 733, 738–70 (E.D. Va. 2004). The court held that the officers were agents of the police department "and thus cannot legally conspire with one another." *Id.* at 748.

Finally, there are two exceptions to the intracorporate conspiracy doctrine: (1) "if agents perform unauthorized acts in furtherance of a conspiracy"; and (2) if defendants have "an independent personal stake in achieving the corporation's illegal objective." *Roberts*, 2017 WL 896983, at *6. However, the court need not determine whether one of these exceptions applies because Plaintiff does not adequately plead a conspiracy among the Defendant Officers. Plaintiff fails to include factual allegations as to *how* the officers engaged in a conspiracy and instead relies on bare

16

legal conclusions that restate the elements of the cause of action. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1007 (4th Cir. 1987) ("[M]ere allegations of a conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient."). As such, Defendants' motion as to VII is **GRANTED**.

## IV. Conclusion

For the foregoing reasons, Defendants' motion, [ECF No. 20], is **GRANTED** in part and **DENIED** in part. Specifically, the Motion is **DENIED** as to Counts I, II, III, and VI, and **GRANTED** as to Counts IV, V, and VII. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. ENTER: July 31, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE